# Methodist Church *against* Remington et al.

A trust in favour of an unincorporated religious society is an available one, if the society be constituted entirely of members resident within the state.

The statutes of *mortmain* have been extended to this state only so far as they prohibit dedications of property to superstitious uses, and grants to corporations without a statutory license.

The act of 1730, entitled " an act for the enabling of religious societies of protestants within this province to purchase lands for burying grounds, churches," &c., being an affirmative statute, cannot be construed to prohibit a trust which derives its support from the common law.

It is the equitable powers of a court which can compel the execution of a trust which has not the benefit of any principle of legislative recognition, but those equitable powers will not be exercised to enforce a trust which is against the policy of the state, as expressed by the legislature in its acts in parallel cases.

The deed in this case to individuals " for the use of the members of the Methodist Episcopal Church in the United States of America," &c., *held* not to create an available trust.

APPEAL from the circuit court of *Alleghany* county.

This was an action of ejectment in the name of *The Methodist Church of the city of Pittsburgh*, against *Stephen Remington, Charles Avery, Thomas Robinson, Charles Craig, Patrick Leonard, John Phillips, Edward Moore, Andrew Applegate, John Bissell, Robert White* and *George Brown*, for parts of lots Nos. 469 and 470, in the city of Pittsburgh, and also for an acre of land in the Northern Liberties of Pittsburgh. The cause originated in the late divisions in the Methodist Episcopal church, and was tried before Mr Justice *Rogers*, who in order to bring the questions of law involved in it directly before the court in bank, directed a general verdict for the plaintiff.

[Methodist Church v. Remington.]

The property was claimed by the Methodist Episcopal church, which sued in the name of the corporation, as a trustee to its use.

The original title was not the subject of dispute; and the plaintiff gave in evidence the following deed, the efficacy of which gave rise to the questions of law which were argued and determined.

This indenture, made the twenty-eighth day of September, in the year of our Lord one thousand eight hundred and twenty-four, between *George Miltenberger*, of Pitt township, in the county of Alleghany, and commonwealth of Pennsylvania, and *Rebecca* his wife, of the one part, and *Charles Avery*, *Thomas Cooper*, *Nathaniel Holmes*, *John Phillips*, *Charles Craig*, *Samuel K. Page* and *James Varner*, trustees of the Methodist Episcopal church of Pittsburgh, the other part: Whereas, *John Woods* and *Theodosia* his wife, by their deed, bearing date the third day of June, in the year of our Lord one thousand eight hundred and thirteen, did grant and convey unto the said *George Miltenberger*, and to his heirs and assigns, four certain contiguous lots or pieces of ground, situate in the city of Pittsburgh, in the commonwealth of Pennsylvania, marked and numbered in the general plan of Pittsburgh, Nos. 467, 468, 469 and 470, bounded by Smithfield street, by Seventh street, by Cherry alley and by Strawberry alley, as by the said recited deed, recorded in the office for recording of deeds in and for the county of Alleghany, in book T, page 62, reference being thereunto had, will more fully and at large appear. And whereas, the said *George Miltenberger* and *Rebecca* his wife, by indenture bearing date the thirtieth day of May, in the year of our Lord one thousand eight hundred and seventeen, granted and devised unto *John Wrenshall*, *Robert M'Elhenny*, the said *John Phillips*, *Robert M'Elhenny*, *Jun.*, *Edward Hazleton*, the said *Nathaniel Holmes* and *Thomas Cooper*, (then trustees of the said Methodist Episcopal church of Pittsburgh) three certain contiguous lots or pieces of ground, situate in the city of Pittsburgh aforesaid, marked in the plan of lots, laid out by said *George Miltenberger*, Nos. 1, 2 and 3, (being part of the said lots marked and numbered in the general plan of Pittsburgh, Nos. 469 and 470) bounded and described as follows, to wit: beginning at the corner of Smithfield street and Seventh street, and running by Smithfield street southwardly sixty feet, thence to lot No. 4, eastwardly a parallel line with Seventh street one hundred and ten feet to *Miltenberger's* alley, thence by the said alley northwardly a parallel line with Smithfield street sixty feet to Seventh street, and thence by Seventh street westwardly one hundred and ten feet to the place of beginning; together with the free use and privilege of the said alley called "Miltenberger's alley," to hold the said described three contiguous lots or pieces of ground, with appurtenances, to the said *John Wrenshall*, *Robert M'Elhenny*, *Edward Hazleton*, *John Phillips*, *Robert M'Elhenny*, *Jun.*, *Nathaniel Holmes* and *Thomas Cooper*, and to their successors in office, in trust, that they erect and build, or cause to be erected and built thereon, a house or place of worship for the use of the members of the Methodist Episco-

pal Church in the United States of America, according to the rules and discipline which from time to time may be agreed upon and adopted by the ministers and preachers of the said church, at their general conferences in the United States of America; and in further trust and confidence, that they should at all times for ever hereafter permit such ministers and preachers, belonging to the said church, as shall from time to time be duly authorised by the general conference of the ministers and preachers of the said Methodist church, or by the yearly conferences authorised by the said general conference, to preach and expound God's holy word therein, and in further trust and confidence, that as often as one of the trustees herein before mentioned shall die or cease to be a member or members of the said church, acording to the rules and discipline aforesaid, then and in such case, it shall be the duty of the stationed minister or preacher, (authorised as aforesaid) who shall have the pastoral charge of the members of the said church, to call a meeting of the remaining trustees as soon as conveniently may be, and when so met, the said minister or preacher shall proceed to nominate one or more persons to fill the place or places of him or them, whose office or offices has or have been vacated as aforesaid, provided the person or persons so nominated shall have been one year a member or members of the said church immediately preceding such nomination and of at least twenty-one years of age; and the said trustees, so assembled, shall proceed to elect, and by a majority of votes appoint the person or persons so nominated to fill such vacancy or vacancies, in order to keep the number of seven trustees for ever : and in case of an equal number of votes for and against the said nomination, the stationed minister or preacher shall have the casting vote; subject to the payment of a ground rent of 300 dollars *per annum* for ever, payable by the said *John Wrenshall, Robert M'Elhenny, Edward Hazleton, John Phillips, Robert M'Elhenny, Jun., Nathaniel Holmes* and *Thomas Cooper,* and their successors, to the said *George Miltenberger,* his heirs and assigns, as by the said recited indenture, recorded in the office aforesaid, in book X, pages 283, 284, 285 and 286, reference thereunto being had, will more fully and at large appear. And whereas, the said *Charles Avery, Thomas Cooper, Nathaniel Holmes, John Phillips, Charles Craig, Samuel K. Page* and *James Varner,* are desirous of extinguishing the said ground rent, and of holding the said described premises in trust as aforesaid, released and discharged therefrom : and whereas, the said trustees have paid and discharged the said ground rent arising upon the said demised premises in full to the day of the date of these presents. Now this indenture witnesseth, that the said *George Miltenberger* and *Rebecca* his wife, for and in consideration of the sum of 3000 dollars, lawful money of the United States, to them in hand paid by the said *Charles Avery, Thomas Cooper, Nathaniel Holmes, John Phillips, Charles Craig, Samuel K. Page* and *James Varner,* at or before the ensealing and delivery hereof, the receipt whereof is hereby acknowledged, have

[Methodist Church v. Remington.]

granted, bargained, sold, released and confirmed, and by these presents do grant, bargain, sell, release and confirm, unto them the said *Charles Avery, Thomas Cooper, Nathaniel Holmes, John Phillips, Charles Craig, Samuel K. Page* and *James Varner,* and their successors (trustees in trust for the uses and purposes herein before mentioned and declared), as well the said ground rent of 300 dollars *per annum* for ever hereafter, as the said three contiguous lots or pieces of ground, situate in the city of Pittsburgh aforesaid, and marked and numbered in the said plan of lots laid out by the said *George Miltenberger,* Nos. 1, 2, and 3, bounded by Smithfield street, by lot No. 4, Miltenberger's alley, and by Seventh street, containing together in breadth from Seventh street to lot No. 4, sixty feet, and in length or depth from Smithfield street to Miltenberger's alley, one hundred and ten feet as aforesaid, together with all and singular the buildings and improvements, rights, liberties, privileges and appurtenances whatsoever thereunto belonging or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof. Also, all the estate, right, title, interest, property, claim and demand whatsoever, of them the said *George Miltenberger and Rebecca* his *wife,* in law or equity or otherwise howsoever, as well of, in and to the said contiguous lots or pieces of ground, Nos. 1, 2 and 3, as in and to the said ground rent of 300 dollars *per annum.* To have and to hold the said described three contiguous lots or pieces of ground, Nos. 1, 2 and 3 as aforesaid, hereditaments and premises hereby granted or mentioned, or intended so to be, with the appurtenances, unto the said *Charles Avery, Thomas Cooper, Nathaniel Holmes, John Phillips, Charles Craig, Samuel K. Page* and *James Varner,* and their successors in office for ever, released and discharged of and from the said ground rent, of 300 dollars *per annum,* and every part thereof, in trust for the uses and purposes herein before mentioned and declared. Provided, nevertheless, that if the said trustees, or any of them, or their successors, have advanced or shall advance any sum or sums of money, or are or shall be responsible for any sum or sums of money, on account of the said premises, and they, the said trustees or their successors, be obliged to pay the said sum or sums of money, they or a majority of them shall be authorised to raise the said sum or sums of money by a mortgage on the said premises, or by selling the said premises after notice given to the pastor or preacher who has the oversight of the congregation attending divine service on the said premises, if the money due be not paid to the said trustees or their successors within one year after such notice given. And if such sale take place, the said trustees or their successors, after paying the debt and other expenses which are due from the money arising from such sale, shall deposit the remainder of the money produced by the said sale in the hands of the steward or stewards of the society belonging to, or attending divine service on said premises, which surplus of the produce of such sale, so deposited in the hands of the said steward or

stewards, shall be at the disposal of the next annual conference au-
thorised as aforesaid, which said annual conference shall dispose of
the said money according to the best of their judgment for the use
of the said society.   And the said *George Miltenberger*, for himself
and his heirs, doth covenant, promise and agree to and with the said
*Charles Avery, Thomas Cooper, Nathaniel Holmes, John Phillips, Charles
Craig, Samuel K. Page* and *James Varner*, and their successors chosen
and appointed as aforesaid, against him the said *George Miltenberger*
and his heirs, and against all and every other person or persons law-
fully claiming or to claim the same or any part or parcel thereof, or
any rent or arrears of rent, shall and will warrant and for ever defend
by these presents.   In witness whereof, the said *George Miltenberger*,
and *Rebecca* his wife, have hereunto set their hands and seals the
day and year first above written.

GEORGE MILTENBERGER,   [L. S.]
REBECCA MILTENBERGER,  [L. S.]

Sealed and delivered in the presence of *M. B. Lowrie*.

Recorded Sept. 28th, 1824, book F 2, page 287, &c.

The plaintiff also gave in evidence the act of assembly of the 5th
March 1828, incorporating this church and others.   (*Pamph. Laws*,
143.)   Trustees, *Patrick Leonard, Edward Moore, Thomas Robinson,
James Taber, Adam Baker, Stephen Remington, Andrew Applegate* and
*John Bayard.*   The verdict having been rendered for the plaintiff, a
motion was made by the defendants for a new trial, and the follow-
ing reasons assigned:

The court erred, in charging the jury that plaintiff was entitled to
recover—

1. Inasmuch as the plaintiff and defendants both claim to be the
Methodist Church of the city of Pittsburgh; the defendants claiming
to hold the property in dispute as trustees of said corporation, duly
elected by a majority of the members, and were never legally re-
moved from their said office of trustees.

2. Because the proceedings on the alleged trial of those trustees
by Mr *Lambdin* and the committee appointed by him, did not and
could not affect or impair their right as trustees under the act of incor-
poration.

3. That defendants, at the commencement of this suit, were trus-
tees of said corporation, both in law and fact, and in possession of
the church, and that in either case the plaintiff cannot recover.

4. That the right of defendants to the possession of the property
cannot be inquired into in this form of action; the fact of their being
trustees entitles them to the possession, and their right to be so must
be tried in another way.

5. That the legal title to this property is not vested in the plaintiff.

6. That the trusts created in the deed from *Miltenberger* and wife,
and *O'Hara* and wife, to the grantees therein named, for the use of
the members of the Methodist Episcopal Church of the United States,
and in behalf of such preachers of said church as shall be sent from
time to time as in said deeds mentioned, are void.   The Methodist

Episcopal Church in the United States is not incorporated under our laws, and can neither take nor hold directly or indirectly any real estate.    A grant for the use of said church generally, or of the conference or preachers thereof, cannot be carried into effect.

7. Membership in the Methodist Episcopal church is not a requisite qualification for membership in the corporation called the Methodist Church of the city of Pittsburgh.

The motion was overruled, and the defendants appealed.

The cause was argued in this court by

*W. W. Fetterman* and *Forward*, for appellants.
*Burke* and *Wilkins*, for appellees.

The opinion of the Court was delivered by

GIBSON, C. J.—Before the spirit of discord and separation, which seems at present to possess the elements of all things, had manifested itself in the Methodist society, there was but one congregation of that denomination in Pittsburgh.   In process of time the building, in which its exercises were performed, was found to be too small for its accommodation; in consequence of which the principal subject of this action was purchased, and a church built on it by the Methodist brethren and individuals belonging to other denominations.   The grant was in the form prescribed in the book of "doctrines and discipline" of the society : that is to say, the conveyance was to natural persons, but without words of inheritance, and in trust to erect a house of worship "for the use of the members of the Methodist Episcopal church in the United States of America, according to the rules and discipline which from time may be agreed upon and adopted by the ministers and preachers of the said church at their general conference in the United States of America ; and in further trust and confidence, that they shall at all times hereafter permit such ministers and preachers belonging to the said church as shall from time to time be duly authorized by the general conference of the ministers and preachers of the said Methodist church, or by the yearly conferences authorized by the said general conference, to preach and expound God's holy word therein."   To this was added, a grant to the trustees of perpetual succession, with power to appoint their successors from persons to be nominated by the minister in charge.   To a professional mind it is unnecessary to intimate that this formula was adopted in ignorance of the common law, which suffers not the fee to pass by deed without technical words of inheritance, or an individual to clothe an association of natural persons in one of the principal attributes of a corporation.   What effect the want of proper words of conveyance may have on the ultimate destination of the property, it is not at present for us to say.   The cause has been argued as if the fee had actually passed, and our business is consequently with the validity of the trust.   But it will not be thought an officious interference with the concerns of the society to

suggest to it, or the parties ultimately entitled, the necessity of immediate measures to secure the property, held by it under this form of assurance, to the objects originally contemplated by the donors.

The decision in *Witman* v. *Lex*, 17 *Serg. & Rawle* 388, is full to the point, that a trust in favour of an unincorporated religious or charitable society, is an available one ; and were the *Methodist Society* constituted entirely of members resident within the state, would probably rule the cause. This society, however, pervades the United States, and, till lately, was connected, it is believed, with the same sect in the British provinces in America. It then becomes necessary to inquire, how far a trust in favour of what is, in some respects, a foreign society, is consistent with the spirit of our laws. The act of 1730, entitled "an act for the enabling of religious societies of protestants, *within this province,* to purchase lands for burying grounds, churches, &c." provides that, "it shall be lawful for any religious society of protestants *within this province,* to purchase, take, and receive by gift, grant or otherwise, for burying grounds, erecting churches, houses of religious worship, schools and almshouses, for any estate whatever ; and to hold the same for the uses aforesaid of the lord of the fee, by the accustomed rents." The words "religious societies within this province" are understood to mean congregations, or distinct communities, though, perhaps, members of a superior body, and not particular sects or denominations, that cannot be said to have a local habitation any where : so that, if the trust before us is not to be sustained but on the enabling provisions of this statute, it must fail. On the other hand, it is fair to say that, though it derives no support from the statute, it is not necessarily prohibited by it; for it is an undoubted rule of construction that an affirmative statute such as this is, does not take away the common law, and there certainly was no absolute prohibition of such a trust by the common law, or any previous statute. The statutes of *mortmain* have been extended to this state only so far as they prohibit dedications of property to superstitious uses, and grants to corporations without a statutory license. The present is certainly not a superstitious use ; and, indeed, it is not easy to see how there can be such a thing here, at least in the acceptation of the word by the British courts, who seem to have extended it to all uses which are not subordinate to the interests and will of the established church. So far was this carried in the *Attorney-General* v. *Guise*, 2 *Vern.* 266, that the charge of an annual sum for the education of Scotchmen to propagate the doctrines of the church of England in Scotland, was treated as superstitious, because presbyteries were settled there by act of parliament. The trust before us, then, not being within the purview of any of the statutes of *mortmain,* as extended to this state, and the common law carrying the objects of the conveyance no further into effect than to vest the title in the trustees, how far are we to lend the equitable powers of the court to the execution of a trust which has not the benefit of any principle of legislative re-

cognition? Equitable powers, in support of charitable uses, seem to be founded rather in necessity and the constitution of the court, than in the provisions of the 43 *Eliz.*, which is not in force here ; and granting that in the exercise of them we are to have respect to the usages and necessities of our own people, it must be admitted, on the other hand, that we are to be guided by the policy of the legislature, as proclaimed by its acts in parallel cases. Admitting, then, that this trust requires not the aid of the act of 1730 to remove any positive impediment to it, yet as the execution of it requires an exertion of the equitable powers of the court, it must likewise be admitted that this exertion can be had only in subordination to the avowed policy of the state, which is too clearly expressed in that statute to be misconceived. Nor is it expressed in that statute alone. The power of self-incorporation delegated on certain conditions, by the act of 1791, to associations for literary, charitable and religious purposes, is expressly restrained to " citizens of this commonwealth ;" and the value of the annual profits of real estate to be held even by such corporations, is limited to 500 pounds. The statutes of *mortmain*, too, which deprive corporations of capacity to hold, would be of little avail if foreign unincorporated societies might possess all the incidents of ownership by the instrumentality of a trust. It is fair to infer, then, from all these statutes, an intent to interdict to such societies the use of privileges that were but sparingly allowed to our own citizens. Though no sect has shown a disposition to acquire real estate as an engine of power, or even for purposes of revenue beyond the exigences of its current expenditure, the legislature has entertained an evident jealousy of clerical monopoly, by limiting the right of tenure to just so much ground as may be adequate to the purposes of sepulture and the erection of buildings dedicated to religious or charitable uses. In the act of 1730, it is further provided, that " nothing in this act contained shall be taken or construed to enable any of the said religious societies, or any person or persons whatsoever in trust for them or to their use, to purchase, take or receive any lands or tenements, by gift, grant or otherwise, for or towards the *maintenance or support* of the said churches, houses of worship, schools or almshouses, or the people belonging to the same, or for any other use or purpose, save for the uses in this act before mentioned." Now, though glebes have been held in trust as appurtenant to the churches of unincorporated congregations whose property in the soil has been the subject of judicial recognition, as in *Caufman* v. *The Congregation of Cedar Spring*, 6 *Binn.* 59, yet the trust depended not on the enabling provisions of the statute, but on the custom of the province as stated in *Witman* v. *Lex;* and certainly it does not follow, that the members of a religious society, a vast majority of whom are strangers to the custom, should be let into the benefit of it without a legislative license. It seems to me, however,—I speak for myself—that a statute to authorize such trusts would commend itself not less to the judgment of the lawgiver than to the feelings of the philanthropist. Notwithstand-

2 D

[Methodist Church v. Remington.]

ing the disregard of popular rights apparent in the constitution of the Methodist Episcopal Church; the sacrifices of its ministers to the promotion of piety, by a life of poverty and self-denial, and their uncommon success in restoring to society the lost and the worthless, whose case is ordinarily reached by the ministration of no other clergy, ought, it seems to me, to allay the fear of clerical dominion, and render it worthy of consideration, whether their efforts in the cause of virtue and good government do not deserve to be encouraged by any reasonable concession of the civil authority.

The preceding remarks dispose of the question of the title so far as the Methodist Society is concerned; and as the conclusion at which we have arrived is adverse to a right in it to recover in any shape, the decision might be rested here. There are, however, other matters in the cause which seem to call for consideration. The legal estate, at least for the lives of the original grantees, is vested in the corporation by force of their conveyance to it; but in whom is the beneficial interest? The original trust, though void, was not a superstitious one; nor if it were, would the property, as in England, revert to the state for the purpose of being appropriated *in eodem genere*, as no court here possesses the specific powers necessary to give effect to the principle of *cy pres*, even were the principle itself not too grossly revolting to the public sense of justice to be tolerated in a country where there is no ecclesiastical establishment. The declared trust then being simply a nullity, we have the ordinary case of a purchase in the name of third persons, and consequently a trust resulting by implication of law in favour of those who paid the purchase money. Whether their interests were surrendered to the corporation, by becoming parties to the charter subsequently procured, it is unnecessary to say. If such of the contributors as adhere to the communion of the Methodist Episcopal Church, should still be deemed to have an interest in the property in proportion to the part of its price paid by them, it is obvious, that to enforce it by the law, would produce an endless train of petty legislation, vexatious to all parties, and certainly not very profitable to the cause of religion. But they undoubtedly are entitled to compensation in point of conscience; and not only justice, but every consideration of policy points to a compromise by which they may receive what will no doubt be promptly tendered, a fair remuneration.

The title to the burying ground, which, though included in the action, has not been insisted on, depends on circumstances and principles essentially different. The ground was purchased by individuals belonging to the congregation as a cemetery for the families of themselves, and others who should be found willing to pay for compartments in it; and the title was vested in trustees, but without the semblance of a trust for the Methodist Society, which therefore has no colour of right to it. It is observable, however, as a circumstance to be regretted, that the plan of vesting the title was, as in the case of the church, a conveyance to trustees without words of inheritance,

[Methodist Church v. Remington.]

and an attempted substitution of the principle of succession for the common law principle of descent.

In conclusion, it is but necessary to remark, that even were the Methodist Society beneficially entitled, it could not recover in an action at law, its remedy being a petition to have the trustee for the time being removed for a misapplication of the property to uses foreign to the purposes of the trust ; and least of all, could it recover in the name of the corporation by an action against the corporation's officers, who are *ex officio* entitled to the management, and consequently to the possession of its property.   In every aspect, then, the cause is with the defendants ; and I have only to add the expression of a desire that this unhappy controversy may presently cease, at least within the precincts of this state, where the title is so plainly settled by municipal regulations, as to leave nothing to the usual chances of litigation.   What the event may be in other states, it would be presumptuous in me to predict ; but it certainly would conduce no less to the temporal than to the spiritual comfort of the parties, were they to part in peace having settled their respective claims to the property on the basis of mutual and liberal concession.

*Kennedy*, Justice, took no part, having been of counsel in the cause.

New trial awarded.