Allen Craig et al., Committee of the Carbon County Law Library, Plffs. in Err., v. William Lilly et al., Exrs. of the Estate of Charles Albright, Deceased.

An act directing that certain fines, amercements, penalties, and forfeited recognizances, shall be paid to a committee to be appointed by the court of common pleas and subject to its control, for the establishment and maintenance of a law library, does not by implication and in the absence of express words create a corporation.

A bequest to such a law library is a bequest to a mere inanimate thing, having no capacity to receive a gift, and is therefore void.

Under the facts in this case, *held*, that even if the library were a charity, the gift would be defeated by the act of April, 1855, because the will in which it was contained was made within thirty days of the testator's death.

(Argued March 9, 1887. Decided April 18, 1887.)

January Term, 1887, No. 336, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Carbon County to review a judgment for the defendants in a case stated. Affirmed.

The case stated was as follows:

That Charles Albright died at his residence in the borough of Mauch Chunk, county of Carbon, state of Pennsylvania, on the 28th day of September, A. D., 1880, leaving to survive him his wife, Naomi E. Albright, and that in his last will and testament, dated the 18th day of September, A. D., 1880, among other bequests made the following:

Fifth. "I give and bequeath to my beloved wife my law library for and during her natural life, and after her death to the Carbon County Law Library, its successors and assigns."

That said Naomi E. Albright, wife of Charles Albright, deceased, died November 9, A. D., 1884.

The Carbon County Law Library was established by act of assembly, approved the 9th day of April, A. D., 1868 (P. L.

NOTE.—For libraries as charities, see Pepper's Estate, 154 Pa. 331, 25 Atl. 1058; Manners v. Philadelphia Library Co. 93 Pa. 165, 39 Am. Rep. 741; Billington v. Gautier Steel Co. 19 W. N. C. 339. Cited in Pierson v. Gaskill, 23 Pa. Co. Ct. 116.

776), a copy of which act is hereto attached (marked A) and made a part of this case.

If the court should be of the opinion that the Carbon County Law Library has no such existence under the act of assembly hereinafter cited (marked A) as would entitle it to take under the clause of said will above cited, or that the bequest to the Carbon County Law Library, contained in the clause of the will of Charles Albright, deceased, above cited, is void under the provisions of § 2 of the act of assembly, approved the 26th day of April, A. D., 1885 (P. L. 332), a copy of which section is hereto attached (marked B) and made a part of this case; and that said library is the property of the estate of Charles Albright, deceased, then judgment to be entered for the defendants in this case; but if the court should be of the opinion that said bequest is not void, and that said library is the property of the Carbon County Law Library, then judgment is to be entered for the plaintiffs in this case, the costs to follow the judgment and both parties reserving the right to sue out a writ of error thereon.

A. No. 720.                              1868, P. L. 776.

An Act Relative to the Establishment of a Law Library in the County of Carbon.

Section 1. Be it enacted, By the senate and house of representatives of the commonwealth of Pennsylvania, in general assembly met, and it is hereby enacted by the authority of the same, that all fines, amercements, and penalties imposed by the courts of Carbon county, and all recognizances declared forfeited by said courts, which under the existing laws are not payable to the commonwealth of Pennsylvania for its own use are hereby directed to be paid to the committee hereinafter named for the establishment and maintenance of a law library, to be kept in the court house of the said county, for the use of the court and bar thereof.

Provided, however, That the provisions of this act shall not extend to any moneys which, under existing laws, are payable to the public school fund or funds for school purposes.

And provided further, That this act shall not be construed to impair or affect any claim for costs or for damages to which any person may, under existing laws, be entitled to out of such forfeited recognizances for injuries sustained by such person by the commission of the crime or misdemeanor, on account of which such recognizances may have been given.

Section 2. The money thus arising shall be expended from time to time under the direction of a committee composed of three resident members of the bar of said county to be appointed by the court of common pleas of said county, at the next term immediately after the passage of this act; said committee to continue until the next succeeding first day of January, and the said court shall annually, at the last term of said court in each year, appoint said committee to serve from the first day of January then ensuing for one year, or until their successors are chosen; Provided, That said court shall have the power to fill any vacancy which may occur in said committee by reason of death or otherwise.

Section 3. The said court shall from time to time adopt such rules and regulations as may be necessary or expedient for the proper use and preservation of said library, and shall require said committee annually, at the last term of said court in each year, as well as at other times, when it may be deemed expedient to present to the court a detailed account in writing of their doings, showing the condition of the library, number of volumes, and such other information as may be required, together with a statement of all moneys received or expended by them during the year, which report shall be inspected by the court and remain open to exceptions until the first day of January then next ensuing, after which, if no exceptions are filed, the same shall be filed away among the archives of said library, and all funds and property belonging to said library in the hands of said committee shall be immediately handed over to their successors, which duty may be enforced in case of default by attachment or otherwise as the court may direct.

Section 4. The county commissioners of said county are required, as soon as practicable, to designate a room in the court house of said county for said library, from which the books of said library shall not be removed, except by order of the court in term time, or in accordance with the rules and regulations adopted as above directed; and the clerk of the court of quarter sessions is required to prepare within ten days after the close of each term of said court, two certified lists of all recognizances forfeited during said term, one of which lists he shall deliver to the committee aforesaid and the other to the district attorney of said county; and it shall be the duty of said district attorney to

proceed forthwith to collect the amounts thereof and pay the same to the said committee.

Section 5. All laws inconsistent herewith be, and the same are, hereby repealed.

Elisha W. Davis, Speaker of the House of Representatives.

James L. Graham, Speaker of the Senate.

Approved, the 9th day of April, A. D., 1868.

John W. Geary.

B. No. 347. 1855, P. L. 332.

An Act Relating to Corporations and to Estates Held for Corporate, Religious, and Charitable Uses.

Section II. That no estate, real or personal, shall hereafter be bequeathed, devised, or conveyed to any body politic, or to any person in trust for any religious or charitable uses, except the same be done by deed or will, attested by two credible, and at the same time, disinterested witnesses, at least one calendar month before the decease of the testator or alienor; and all dispositions of property contrary thereto shall be void, and go to the residuary legatee or devisee, next of kin or heirs, according to law; Provided, That any disposition of property within said period bona fide, made for a fair, valuable consideration shall not be thereby avoided.

Approved, the 26th day of April, A. D., 1855.

James Pollock.

The court entered judgment for the defendants, and this was assigned as error.

*Allen Craig, Frederick Bertolette,* and *L. H. Barber,* for plaintiffs in error.—The act of assembly establishing the Carbon County Law Library creates a corporation or body politic. "There are some persons and associations, who have a corporate capacity only for particular, specified ends, but who can in that capacity sue and be sued as an artificial person. These bodies are termed quasi corporations. Yet, as it is not essential to a corporation that it should be vested with all the usual powers of corporations, but only that it should be clothed with perpetual succession and be recognized by the law as an artificial person, such bodies are really corporations." Sharswood's Bl. Com. bk. 1, p. 469, note 1.

When it manifestly appeared from the different clauses of several local acts of Parliament that conservators of a river navigation should take land by succession and not by inheritance, although they were not created a corporation by express words they were so by implication; and that being so, they were entitled to sue in their corporate name. Tone River Conservators v. Ash, 10 Barn. & C. 349.

A corporation is a legal institution, devised to confer upon the individuals of which it is composed, powers, privileges, and immunities which they would not otherwise possess, the most important of which are continuous legal identity and perpetual or indefinite succession under the corporate name, notwithstanding successive changes by death or otherwise in the corporators or members of the corporation. 1 Dill. Mun. Corp. 91.

In the creating of a corporation the law does not seem to require any set form of words to be made use of, as *incorporo, fundo, erigo,* etc., but any words equivalent will be sufficient. 2 Bacon Abr. p. 438.

If the King grants lands to the men or inhabitants of D. *hæredibus et successoribus suis* rendering rent for anything touching these lands, this is a corporation, but not to other purposes. 2 Bacon Abr. p. 439.

A legislative act which authorizes the judges of a particular court to take bonds to themselves in their official capacity, held to confer on them as to such bonds a corporate character. Abbott, Digest of Corp. § 92, p. 364.

There is no particular form of words requisite to create a corporation. A grant to a body of men to hold mercantile meetings has been held to confer a corporate capacity. A grant of lands to a county or hundreds, rendering rent, would create them a corporation for that single intent, without saying, to them and their successors. 2 Kent Com. p. 276, 11th ed. 320; Denton v. Jackson, 2 Johns. Ch. 325.

A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its own creation confers upon it, either expressly or incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created. Among the most important are immortality and, if the expression may be allowed, individuality; properties by which a perpetual succes-

sion of many persons are considered as the same, and may act as a single individual. Dartmouth College v. Woodward, 4 Wheat. 636, 4 L. ed. 659.

A corporation is a franchise, possessed by one or more individuals with the capacity of perpetual succession and of acting as a single individual. 2 Kent Com. p. *368, 11th ed. 303.

Succession is a corporate franchise, by which property passes from predecessor to successor, as it does from ancestor to heir, by inheritance. Neither are particular words necessary to create the corporation; a public grant of corporate privileges is, *per se,* an incorporation to give the capacity of enjoyment according to the grant; as, to the inhabitants of a town, to have *guildam mercatoriam,* which unites them by the franchise and makes them as a natural person for the purpose. And as the only thing for which a charter is necessary is to grant the franchise of succession, its actual enjoyment and exercise is, *per se,* evidence that it was by lawful and competent authority. Magill v. Brown, Brightly (Pa.) 370, 371.

The King's creation may be performed by the words *creamus, erigimus, fundamus, incorporamus,* or the like. Nay, it is held that if the King grants to a set of men to have *guildam mercatoriam,* a mercantile meeting or assembly, this is alone sufficient to incorporate and establish them forever. 1 Bl. Com. p. 474.

The legislature may create a corporation without requiring conformity to the usual mode of organization known to the common law. Penobscot Boom Corp. v. Lamson, 16 Me. 224, 33 Am. Dec. 656.

It cannot be questioned that no particular form of words is ever required to constitute a corporation. It was so successfully held in the Case of Sutton's Hospital, 10 Coke, 30, and is so laid down in Kyd on Corporations; 2 Kent Com. 27; Rolle Abr. title, *Corporations,* F. 1; Bow v. Allenstown, 34 N. H. 351, 69 Am. Dec. 501.

Wherever it is apparent that the intention of the legislature will be defeated if certain parties are not found to possess corporate powers, they will be held to be created a corporation. Dyer, 100 A; Russell v. Devon, 2 T. R. 672; Stebbins v. Jennings, 10 Pick. 183; North Hempstead v. Hempstead, 2 Wend. 109; Bow v. Allenstown, 34 N. H. 351, 69 Am. Dec. 501.

Any body of persons capable of acting as one man, and in a

single name fixed by law, having succession, is in some sense a corporation. Louisville & N. R. Co. v. Davidson County Ct. 1 Sneed, 637, 62 Am. Dec. 449.

The act of assembly incorporates the Carbon County Law Library by implication. The grant of the legislature to the committee of the law library and their successors, for the purpose of establishing and maintaining a library, evinces such a purpose and imposes such a burden as can only be exercised and carried out in a corporate capacity.

So corporations may exist by implication. If there be granted by the state to individuals such property, rights, or franchises, or imposed upon them such burdens, as can only be properly held, enjoyed, continued, or borne, according to the terms of the grant, by a corporate entity, the intention to create such corporate entity is to be presumed; and corporate capacity is held to be conferred, so far as is necessary to effectuate the purpose of the grant or burden. Dyer, 400; Tone River Conservators v. Ash, 10 Barn. & C. 349; Denton v. Jackson, 2 Johns. Ch. 325; Coburn v. Ellenwood, 4 N. H. 101; Atkinson v. Bemis, 11 N. H. 46; North Hempstead v. Hempstead, 2 Wend. 109; Thomas v. Dakin, 22 Wend. 9; Stebbins v. Jennings, 10 Pick. 188; Cooley's Bl. Com. bk. 1, 472, note 4.

A corporation may be created by implication without express words of creation. It was held that, as it manifestly appeared that the conservators were to take lands by succession and not by inheritance, they were a corporation by implication, although not created so by express words. 2 Bacon Abr. 440; 2 Kent Com. 270, note E, 12th ed.

Direct words are not necessary to constitute a corporation. Incorporation may arise by necessary implication from the language of a legislative act. Mahony v. Bank of State, 4 Ark. 620; Murphey v. State Bank, 7 Ark. 57; Abbott, Digest of Corp. 363, § 84.

When the Crown grants lands to "the men of Islington" at a certain rent, this incorporates them, for otherwise the grant could not be fully carried into effect. Rapalje & La. Law Dict. 299.

An act of the legislature, which requires the supervisors of a county to erect a portion of a county into a levee district, to exercise corporate powers, makes a levee district so organized by

the supervisors a corporation, and a public corporation, even if the act in terms does not declare it a corporation. Dean v. Davis, 51 Cal. 406.

Nor is it necessary that the name of the corporation should be expressed in the act of incorporation; it may be implied from the nature of the act.

The name may not only be expressed in the patent but implied in the nature of the thing. As, if the King should incorporate the inhabitants of Dale with power to choose a mayor annually, although no name be given, yet it is a good corporation by the name of the mayor and commonalty. Field, Corp. 32, § 24.

When a corporation is created a name is always given to it; or supposing none to be actually given, a name will attach to it by implication; and by that name alone it must sue and be sued and do all legal acts, although a very minute variation therefrom is not material. 1 Potter, Corp. p. 17, § 12.

A corporation may have a name only by implication. Sharswood's Bl. Com. bk. 1, 475, note 4.

But although a corporation must have a name, yet that must be understood to be either expressed in the patent, or implied in the nature of the thing. 2 Bacon Abr. p. 441.

The King's creation may be performed by the words, *creamus, erigimus, fundamus, incorporamus,* or the like, says Blackstone as already cited. The act of assembly creates by the word "establish." The definition of *fundamus* is, we found, we establish; of *erigimus,* we erect, we found. Andrews & Ainsworth's Lat. Lex.

"To establish" is defined by Webster and Worcester, to found, to institute. We have, then, in the act of assembly the same creative and operative words, necessary, in law, to form a corporation.

The court below not only held that the Carbon County Law Library was not a corporation and incapable of taking the bequest, but it also held that the library and committee thereof, as established by the act of assembly, was not such an association of individuals, or entity, as was competent to take the bequest.

In reviewing the judicial history of this state it is believed that there will be found no decision that an incorporation is necessary to give to any association of individuals the capacity of taking and enjoying an estate in perpetuity, either by the as-

sumed name of the society, or by trustees, for their use. Magill v. Brown, Brightly (Pa.) 352.

Our contention is that the Carbon County Law Library is either a corporation, or else a legal entity, or association of individuals directed and governed by a committee, and, in either case, capable of taking the bequest.

*Freyman & Kiefer,* for defendants in error.—By the terms of the case stated the question is brought down to the existence of the plaintiff in error as given to it by the act just cited. The title of the act declares that it is "An Act Relative to the Establishment of a Law Library in the County of Carbon." It is not an act to incorporate.

The first section provides that the fines, etc., are to be paid to a certain committee "for the establishment and maintenance of a law library, to be kept in the court house of said county, for the use of the court and bar thereof." Could a corporation be kept in the court house? Clearly, the library spoken of in the first section is a mere collection of books for the use of the court and members of the bar. But it is argued that by the terms of the act perpetual succession is given to the committee. But what provision is made for this succession? The court shall appoint, and shall fill vacancies in, said committee. In corporations of every style and class the succession is regulated by the members or corporators themselves, and not by an outside party.

The affairs of the alleged corporation are not to be controlled by the committee, as assumed by the plaintiffs in error. The third section of the act provides for the adoption of rules and regulations by the court. The power of governing its own affairs is one of the fundamental rights of a corporation. It is to act as one person, although composed of many. The many are to speak and act as one. In the regulation of the affairs of the alleged corporation the committee are powerless, except to expend the funds paid to them, and then only for one specified object, *viz.,* the purchase of books. And even in this they are acting under the court, and as its agents or officers. The committee act in all matters relating to the law library, so far as they have power to act, simply as the agents or officers of the court, and must account to the court. All this is repugnant to the idea of a corporation. It cannot be pretended that the court is the corporation; and yet a careful perusal of the act shows

that the court is the governing power to look after the affairs of the law library. It has exclusive control over the same as well as over the committee.

The full control given to the court excludes any presumption that any incorporation was intended, and shows that the intent of the legislative mind was to provide for a collection of law books for the use of the court and bar of Carbon county, and for the preservation and care of these books.

It is not necessary that there should be a corporation or body politic in order to accomplish the purposes and objects of the act; and therefore none can be said to have been created by implication or inference. All the objects of the act can be attained without the creation of a corporation. The object was the collection and preservation of a lot of law books; and provision is made for the accomplishment of this end. All necessary restrictions and safeguards are thrown around the property when collected; and it does not follow, as in many of the cases cited, that a corporation is to be implied from the necessity of the case. Therefore the cases cited by the counsel for plaintiffs in error have no application to this case.

The Carbon County Law Library has no such legal existence under the act as to enable it to take under the will.

In Magill v. Brown, Brightly (Pa.) 347, it is held that a devise to an unincorporated religious association is good, but the decision rests upon the ground that it is a bequest to a charitable use. Methodist Church v. Remington, 1 Watts, 219, 26 Am. Dec. 61; and Witman v. Lex, 17 Serg. & R. 90, 17 Am. Dec. 644, are to the same effect.

This bequest can only be sustained, if at all, upon the ground that it is a charitable bequest, and then it is at once met by § 11 of the act of April 26, 1855 (P. L. 332), which declares a bequest to a charity void if the testator died within one calendar month after making his will.

No particular form of benevolence is necessary to constitute a charity. General Albright certainly gave his library to the Carbon County Law Library from motives of charity, intending thereby to benefit the members of the bar of Carbon county.

In Pickering v. Shotwell, 10 Pa. 27, the devise was of the residue of the testator's estate to "be applied, under the direction of the Monthly Meeting of Friends of Philadelphia for the northern district, as a fund for the distribution of good books

among poor people in the back part of Pennsylvania, or to the support of a free school, or institution, in or near Philadelphia." The court after reviewing several decisions says: "In Pennsylvania such a bequest would not be the less charitable, although the books were scientific."

A voluntary association of individuals who have contributed funds for a public purpose will be regarded as a charity, and a court of equity in this state has jurisdiction over the parties. Funds supplied by the gift of the Crown, or from the legislature, or from private gift, for legal, general, or public purposes, are charitable funds, to be administered by a court of equity. Therefore, where money is given by will, gift, or voluntary contribution of individuals, to a voluntary, unincorporated hose company or fire association formed for general and public usefulness, without individual emolument or advantage, it is a charity over which a court of equity will exercise control. Thomas v. Ellmaker, 1 Pars. Sel. Eq. Cas. 98.

OPINION BY MR. JUSTICE CLARK:

Upon a careful examination of this case, we are of opinion that the legacy created in the will of the late Charles Albright, deceased, in favor of the Carbon County Law Library, could only be sustained as a gift or legacy to charitable uses. The Carbon County Law Library has no corporate existence; it is not even an unincorporated society; it has no membership, no constitution or contract of association, in fact, no organization. The library of books is, of course, a thing inanimate, belonging perhaps to the county, and, as the learned judge of the court below suggests, has no more capacity to receive a legacy or a bequest than the court house itself.

It is unnecessary, however, for us to decide whether or not the objects and purposes of the law library, as contemplated in the act of April 9, 1868, constitute a charity, for if the testator's provision be a bequest to a charitable use, it is defeated by the act of April 26, 1855 (P. L. 332), and if not, it is void for want of a proper person to receive it.

The judgment is affirmed.