## Amole's Estate.

*Wills—Gift for charitable use—Execution of will—Charity—College—Act of April* 26, 1855, *P. L.* 328.

A gift to a college will be construed to be a gift to a charitable use within the meaning of the Act of April 26, 1855, sec. 11, P. L. 328, relating to the execution of wills within one calendar month from testator's death, where it appears that the college in question was incorporated; that it included as one of its departments a school of theology; that the corporation was under the control of members of a particular denomination, although its management was not denominational, various denominations being represented in its faculty; that the college was not self-supporting, but was maintained by gifts, contributions of churches, tuition fees and endowed scholarships; that young men were aided to the extent of their tuition bills, and to some, in their room bills, and to some, loans were made to be repaid after graduation.

In such a case it is immaterial that there is no word in the will in connection with the gift, indicating a charitable purpose.

Argued Nov. 20, 1906. Appeal, No. 55, Oct. T., 1906, by Ursinus College, from decree of O. C. Chester Co., dismissing exceptions to auditor's report in Estate of Christian Amole, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Exceptions to report of T. R. Cornwell, Esq., auditor.
The facts appear by the opinion of the Superior Court.

*Error assigned* was in dismissing exceptions to auditor's report.

*J. Frank E. Hause*, for appellant.—Ursinus college is not by its charter, by its by-laws, or by its methods of operation and instruction, a charitable institution.

No student benefits in any degree by any gifts, endowments or the like, in order to secure a college education.

*Wm. M. Hayes*, with him *J. Carroll Hayes, C. W. Talbot* and *C. H. Ruhl*, for appellees.—A devise to a school, under the auspices and control of a religious denomination or sect, and

confined to the youth of its members, both rich and poor, and in which the peculiar views of Christianity, as entertained by that denomination, constitued a part of the instruction imparted in the school, is a devise to a charitable use: Price v. Maxwell, 28 Pa. 23; Miller v. Porter, 53 Pa. 292.

OPINION BY RICE, P. J., February 25, 1907:

By his will executed the day before his death Christian Amole gave the residue of his estate to Ursinus College. This corporation was created in 1869, by a special act of the Pennsylvania legislature " for the purpose of imparting instruction in the sciences, literature, liberal arts and learned professions." In a clear and satisfactory report, which was approved by the orphans' court, the auditor appointed to distribute the balance in the hands of the executor found that this was a gift to a charitable use within the meaning of the eleventh section of the Act of April 26, 1855, P. L. 328, and was void because the will was executed within one calendar month of the testator's death.

In the constitution adopted in 1869, and still in force, it is provided that: no person except a member of the German Reformed Church in good standing shall be elected a member of the board of trustees, when such election will leave representation of said church in the board less than three-fourths of the whole number for the time being; no person, not a member of the German Reformed Church, in good standing, shall be elected to the board except by a unanimous vote of the members present; the board shall make no application to the legislature to alter or amend the act incorporating Ursinus College except by petition setting forth particularly the changes desired, and signed by every member of the board for the time being; the religious and moral principles of the college shall always be those of the Evangelical Protestant Church, and in essential historical harmony with those of the German Reformed Church, as represented by him whose distinguished name the institution bears; but no pupil who sustains a good moral character and is willing to comply with the regulations of the institution shall be excluded from its privileges on account of his religious opinions; in organizing the different departments of instruction in the college, due regard shall always

be had to the wants of the German population in our country, and especially to the wants of the German element of the German Reformed Church; to alter, amend or repeal the sections containing the foregoing provisions shall require the unanimous vote of a full board.

The college embraces the following departments, all under one corporate management: the college; the summer session; the academy or preparatory school; the school of theology.

The following facts, stated for the most part in the language of the auditor, should also be noticed as showing how the institution is conducted. Each applicant for admission to the school of theology must present a certificate of church membership; and the course of instruction therein is open to students of all denominations of Christians. Although the corporation is under the control of the members of the German Reformed Church, the management is not denominational. Various denominations of Christians are represented in the faculty. This is true of the theological department, where of the seven instructors only two are identified with the reformed church; the others being of other denominations. The course of study in this department is one of broad theological learning common to the great majority of divinity schools and is open to students of every Christian faith.

Coming now to the facts more particularly pertinent to the argument of appellant's counsel, it appears that the corporation has no capital stock, and no membership other than the members of the board of direction. It has no provision for dividends or distribution of profits. The college is not self-supporting. The income from tuition received from students is insufficient to meet expenses. The funds on which the college has been founded and on which it is maintained are derived from the following sources: The gifts of individuals; contributions of churches; the tuition fees received from students; eighteen endowed scholarships of $1,000 each; the John A. Wanner fund of $2,500; donations during life of Robert Patterson of Philadelphia, amounting to $52,000, and a bequest from him of $10,000; the Robert Patterson endowment fund of $150,000; the alumni endowment fund of $11,000; the church history fund of $4,000; the Samuel H. Bibighaus fund for the endowment of the presidency of $15,000; the general endow-

ment fund.    The college fees, including tuition, library, labora-
tory, gymnasium, are $100, of which $50 represents tuition, or
the value of a scholarship; but candidates for the ministry
and the children of ministers are exempt from the payment of
tuition.    Young men otherwise unable to command the privi-
leges of the institution are aided to the extent of their tuition
bills, and in some cases in their room bills also, by giving them
opportunity to render services to the college; by giving them
a loan on approved security, payable after graduation, without
interest; or by beneficiary support, which is pecuniary aid sent
by churches and sometimes by individuals for the support of a
student, designating for whom it is intended.    The college is
expected to take an obligation from the student, who gets the
use of the money without interest.    After his graduation and
entry upon the ministry, he must return it in annual install-
ments of $50.00.    The money when received again by the college
is again loaned to other students as the benefactor may se-
lect.

The foregoing statement taken from the auditor's findings of
fact, none which is excepted to, is a complete refutation of the
claim made in the argument that this is not a charity, because
every student is required to pay the usual charges of the institu-
tion for instruction, and no student benefits in any degree by any
gifts, endowments or the like, in order to secure a college edu-
cation.    Some students are exempt from payment of tuition
fees; others are assisted by loans of money and are permitted
to discharge the obligation by repayment in annual installments
without interest, which, in effect, does not differ from a remis-
sion of part of the charges presently payable; and all students
receive the benefits of just such gifts as this, for without them
or an increase of the charges to the students the institution
could not be maintained as it is now maintained.    A gift to a
school does not cease to be for charitable uses, because religious
instruction is combined in such school with that of a literary
and scientific character, nor because its benefits extend alike
to the rich and the poor: Price v. Maxwell, 28 Pa. 23.    Upon
the principle that when terms of art or technical terms are used,
and there is nothing in the statute to show that they were
used in a restricted or popular sense, they must be taken ac-
cording to the acceptation of the learned in the art, trade or

science to which they properly belong, it was definitely decided in the thoroughly considered case above cited, that the words "charitable uses" had acquired a legal and technical signification in which they must be understood in the construction of this section of the act of 1855. Chief Justice LEWIS speaking for the court said: "We have no doubt that they were so understood by the legislature, and that they were intended to embrace objects of a religious, literary, and scientific character, as well as those which related to the poor and afflicted." In Miller v. Porter, 53 Pa. 292, where the meaning of these words was again fully considered and discussed, it was declared: "No matter that it was not to be a free school; it was to bring the opportunities of education nearer home to the people; and he who cheapens popular education, or tempts a larger number into 'wisdom's ways,' is a public benefactor, and what he does is, in the sense of the statute, a charity."

Another point suggested in the appellant's argument is that no word in the will, in connection with this gift, indicates a charitable purpose. But the gift being to an incorporated institution, both founded and conducted as a charity, this is to be presumed without other express words. Even in the case of a bequest to unincorporated. charitable associations, it has been held that the bequest is not necessarily void because it was not made upon any defined charity or for any specified charitable uses. "Great numbers of cases," said Justice STRONG, "might be cited, in which gifts to associations whose objects were exclusively charitable, have been sustained as charities, though the direction was to pay into the general funds of the associations, and though there was no express requirement that the donor's bounty should be applied to any other uses:" The Evangelical Association's Appeal, 35 Pa. 316.

We need not pursue the discussion further. We entertain no doubt that this was a gift to a charitable use within the meaning of the eleventh section of the act of 1855.

The decree is affirmed, the costs of the appeal to be paid by appellant.