## Spotz's Estate

*Ralph E. Rudisill* and *J. Francis Yake,* for account-
ant.

*J. Francis Yake, Jr.,* for residuary legatees, except-
ants.

*George Hay Kain,* for residuary legatee York Chap-
ter, Order of Eastern Star.

GROSS, P. J., April 12, 1944:—Gussie A. Spotz died
September 11, 1938, unmarried, leaving a will dated

September 3, 1938, giving, in the fourth item thereof, a life estate with power of consumption to her brother, Percy T. Hoffheins, whom she also appointed executor, and provided in the residuary clause as follows:

"Fifth: After the death of my said brother, Percy T. Hoffheins, whatever remains of principal and interest I order and direct my hereinafter named executor, or the survivor, to convert into cash, and after the same is so converted I order the executor or survivor to divide the same estate into three equal parts.

"(a) One share or part thereof I give, devise and bequeath to my niece, Fern Hoffheins Hemler, absolutely, her heirs and assigns.

(b) One share or part thereof I give, devise and bequeath to my niece, Frances Hoffheins, absolutely, her heirs and assigns.

"(c) The other equal part or share thereof, I give, devise and bequeath to the York Chapter No. 169 of the Order of Eastern Star, its successors and assigns. If this bequest fails then I order and direct that this share shall be divided equally between my two nieces above named."

Her estate consisted of personalty only. The account of the executor was filed and audited and the residuary balance thereof, the sum of $8,562.81, we awarded to Percy T. Hoffheins under the fourth item of the will. These funds were invested by him in real estate which, after his death, was sold under order of this court by George D. Hemler, successor executor, who accounted for the proceeds in the instant account.

At the audit of this account counsel for Fern Hoffheins Hemler and Frances Hoffheins (now Craig), two of the residuary legatees, claimed the entire balance on the grounds (1) that, testatrix having died within 30 days after the execution of the will, the bequest of one third of said balance to York Chapter No. 169 of the Order of the Eastern Star is void under section 6

of the Wills Act of 1917 because it is a bequest for a religious or charitable use; and (2) if it is not a bequest of that character, it is void for the reason that said chapter of the Eastern Star is a religious or charitable organization and incapable of taking a bequest.

The first ground leads us to the inquiry as to whether or not York Chapter, Order of the Eastern Star, is a religious or charitable organization.

It is the religious or charitable character of the legatee that determines the religious or charitable character of the gift: The Evangelical Association's Appeal, 35 Pa. 316; Lawson's Estate, 264 Pa. 77. "The Order of the Eastern Star" is ordinarily looked upon as a social and fraternal organization which is limited in its membership and composed of men who are Free Masons and women who bear certain relationships to Free Masons or to deceased Free Masons. Its membership in Pennsylvania is about 78,000. York Chapter No. 169, Order of the Eastern Star, hereinafter referred to only as "York Chapter", is a subordinate lodge of the Grand Chapter of Pennsylvania, Order of the Eastern Star, hereinafter referred to only as "Grand Chapter", which is in turn a subordinate of the General Chapter, Order of the Eastern Star, hereinafter referred to only as "General Chapter". None of these three organizations is incorporated. The General Chapter comprises various grand chapters in the States of the United States and in the provinces of the Dominion of Canada and has or may have subordinate chapters under its direct control in jurisdictions where there is no grand chapter. In addition to the grand chapters, which have only State-wide jurisdiction, there are three other grand chapters which are independent but which are recognized by and reciprocally recognize the general chapter, namely, the Grand Chapters of New York, New Jersey, and Scotland. The members of the general chapter consist of all incumbent elective and appointive officers of the general

chapter by virtue of their own right only and certain other officers of the several grand chapters under its immediate jurisdiction, all of whom must be active members in good standing of some subordinate chapter owing allegiance to a grand chapter under its jurisdiction or of a chapter under the immediate jurisdiction of the general chapter.

According to the preamble to the constitution of the general chapter, the landmarks of "The Order of the Eastern Star" are, among other things, a belief in a Supreme Being and the conferring of five secret degrees upon its members. Its lessons are scriptural, its teaching moral, and its purposes benevolent. Its obligations are based upon the honor of those who obtain its secrets and are framed upon the principle that, whatever benefits are due from Masons to the wives, daughters, mothers, widows, and sisters of Masons, reciprocal duties are due from them to Masons. The obligation to the order is voluntarily assumed and perpetual. The election of candidates for degrees or membership must be unanimous, without debate, and kept inviolably secret, and every member is amenable to the laws of the order. The revenues of the general chapter are derived from the granting of charters to chapters, from the sale of books and supplies furnished to chapters, from annual dues of subordinate chapters coming under its immediate jurisdiction, and from a per capita tax on the membership of grand chapters when levied by the general chapter. While paying no sick or death benefits, the general chapter maintains a relief committee for the purpose of contributing funds to effect relief in times of calamity and distress producing great suffering, distress, and want. Such committee shall have power to disburse such funds placed under its control by appropriations made upon recommendation of the board of right worthy grand trustees or from contributions made for that purpose or by indi-

viduals, chapters, or grand chapters of the order or other societies or organizations. The general chapter also maintains an educational committee to follow closely all general work being done along educational lines, whether it be National, State, or local, to coöperate with grand chapters' own educational committees when called upon, and to present to the general chapter or its assemblies their findings, with such recommendations as seem in their judgment to be for the best interests of education in its widest sense.

The constitution of the Grand Chapter of Pennsylvania sets forth that its object and the object of the subordinate chapters constituted under its authority is "to promote the practice of charity and fraternity". The membership of the grand chapter consists of the grand officers who shall hold office until their successors have been elected and installed and certain officers of the subordinate chapters. It functions by and with the authority of the general chapter. Its revenues consist of moneys received from the issuing of new charters and furnishing supplies to subordinate chapters, fees for certain dispensations, from initiations in subordinate chapters, and a per capita tax of 50 cents per year upon members of subordinate chapters, 20 cents of which shall be used to support the Eastern Star Homes of Pennsylvania. The grand chapter maintains a welfare fund which is created by means of a per capita tax of one cent per month on members of subordinate chapters. This welfare fund is dispensed for the assistance of any member of a subordinate chapter under the direction of a committee specially appointed by the grand chapter to administer the affairs of the fund. An educational fund, purely voluntary, may also be created by voluntary contributions from the members of the subordinate chapters at a stated period for the purpose of making loans to sons and daughters of members of the order to assist in securing an education.

There are two Eastern Star Homes in Pennsylvania, both of which are incorporated and managed by separate boards of directors. These homes were established and are being maintained for the aged and destitute members of "The Order of the Eastern Star of Pennsylvania". Applicants for admission to these homes are required to assign and transfer to the home of their admission all their present and future interests in any property, real or personal, and all incomes and annuities to which they are entitled. Their respective boards of directors have the sole right of management. The grand chapter annually contributes from its revenues received from subordinate chapters the sum of $8,000 to each of said homes for their support and maintenance.

York Chapter, of which testatrix was a member at the time of her death, was organized prior to 1914. Its membership shall consist of affiliated master Masons, their wives, daughters, mothers, widows et al., duly elected by unanimous vote. It has always and does now maintain a regular place and time of meeting and its records show a roster of its duly-elected members. On May 19, 1914, it adopted a complete set of bylaws which were in effect at the death of testatrix and are still in effect except as amended in a minor degree on January 5, 1942. These bylaws do not specifically state the objects or purposes of the organization. They adopt a seal, fix the time of meetings, the number, character, and duties of the respective officers, the qualifications for membership, method of holding elections, the assessment and payment of dues, the auditing of accounts, and provisions for amendments to the bylaws. They also provide for the maintenance of a relief committee, whose duty it shall be to visit the members who are sick and in distress and report to the chapter, which may grant relief. While York Chapter is not incorporated according to law, from the viewpoint of the practical administration of its business it is

quite as much an entity as though it had been duly incorporated under the laws of the Commonwealth. Its revenues are derived from fees paid for conferring degrees, admission of affiliated members, annual dues assessed against members, and from income of investments held by the chapter. Under its charter granted by the grand chapter it is authorized to confer the degrees upon elected members of the order according to the ceremonial and lectures as set forth by the general chapter and is also authorized to do and perform all and singular matters and things relative to the order in manner and form prescribed by the constitution, rules, and regulations of the grand chapter. Its financial, recording, and corresponding secretary for the past 18 years testified that, while it does not conduct any charitable enterprise or regularly make charitable disbursements and does not pay sick nor death benefits to its members, it does make small donations to worthy purposes and confers certain courtesies to visiting officers in the form of gifts, and through moneys received by voluntary contribution it also sends flowers to sick members. It does not conduct any religious or educational program other than conducting its meetings in a Christianlike manner. Its financial statement for the year ending March 31, 1938, was offered in evidence, which shows income of $1,748.60 and expenditures totaling $1,620.51. This statement, the secretary testified, is characteristic of the financial statements for other years of the order. We observe in this financial statement that it paid a per capita tax to the grand chapter of $220.50, for charity, $50, for gifts and flags, $130.87, and to the educational loan fund the sum of $50.

It is well settled in Pennsylvania that a bequest for religious or charitable use may be lawfully made to an unincorporated society: Lawson's Estate, 264 Pa. 77.

Section 6 of the Wills Act of June 7, 1917, P. L. 403, makes void a bequest for religious or charitable uses

if the testator died within 30 days after the execution of the will.

There is no contention that York Chapter is a religious organization. The first question that arises is: Do its structural organization, its methods and habits of functioning, and its affiliations with the general and grand chapters constitute it a charity? If they do, the bequest to it is void under the act of assembly referred to.

Whether any particular purpose is a charity does not depend upon the wording of any act of assembly. The Statute of Elizabeth, enumerating charitable purposes, is not in force in Pennsylvania. While each purpose stated in that statute is a charity in Pennsylvania, there are many other similar purposes which are also charities: Kimberly's Estate (No. 2), 249 Pa. 475. We have numerous decisions in this State which define a charity as follows:

"A charity in a legal sense may be more fully defined as a gift to be applied consistently with existing laws for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government": Taylor v. Hoag et al., 273 Pa. 194, 197.

In Sharp's Estate, 71 Pa. Superior Ct. 34, 38, the Superior Court has said:

"A charitable use is necessarily an unselfish use so that if the gift is used for the personal benefit of the members of the beneficial association the unselfish element is removed, and with it the charitable use." See also Herbig's Estate, 11 Erie 269.

In Babb v. Reed et al., 5 Rawle 151 (1835), the Supreme Court held that an unincorporated lodge such as the Odd Fellows, whose objects are the employment

of its funds for the purpose of mutual beneficence among its members and their families, is not a charity either under the common law or the Statute of Elizabeth, which statute, however, is not in force in Pennsylvania. In Sharpe's Estate, supra, it was held that the Odd Fellows Home of Pennsylvania, a corporation formed to purchase a home for the support and maintenance of aged and indigent Odd Fellows in such manner as the bylaws may prescribe, is not a charity, and that Rebekah Home, Incorporated, organized to support and maintain the widows or wives of the indigent Odd Fellows, dependent Rebekahs, and members of the ladies' auxiliary of the Odd Fellows Home, is not a charity. The same case also holds that the Great Council of the Improved Order of Red Men is the directing body of an order which is strictly a beneficial association and not a charity. The opinion of the court does not say whether the great council is or is not an incorporated body, but we assume that it is unincorporated from the fact that with respect to the other two organizations the court points out the fact of their incorporation. In Kellner, Exec., v. Stahl, 7 D. & C. 95, it was held that a Masonic lodge, the essential purpose of which is fellowship, is not a charity, even though as incident to its purposes it maintains a committee on charity whose activities are confined to its own members. In Herbig's Estate, 10 Erie 304, it is held that the Odd Fellows Home is not a charitable organization. One of the latest decisions on this subject is that of Tollinger's Estate, 48 Lanc. 527, wherein it is held that a Masonic lodge is not a charity.

The structural organization of York Chapter is clearly intended to be an association for the personal benefit of the members of that chapter, although it does pay a per capita tax to the grand chapter from which a certain amount is contributed toward the maintenance of the two homes of the Eastern Star. It

is clear that the main purpose and object of the local chapter is not that of charity. Its activities are confined to its own members and for the promotion of friendly intercourse and companionship among them. Under the constitution and bylaws of the grand chapter the property of York Chapter is expressly made liable for the payment of its debts and it may dispose of all its property or any part thereof by a two-thirds vote of the members present at a stated meeting, and even if its charter is surrendered or revoked we find nothing in the constitution and bylaws of the grand chapter depriving York Chapter of its property, although they do provide that at least temporarily the property must be delivered to the grand chapter.

Lowe's Estate, 326 Pa. 375, holds that in determining whether York Chapter is a charity we must keep in mind that it is distinct from the grand chapter or the General Grand Chapter and that the question is not whether it is a public charity entitled to exemption but whether the bequest to it is one for "charitable uses" within the meaning of the Wills Act of June 7, 1917, P. L. 403, sec. 6.

The object of the grand chapter and subordinate chapters as expressed in the constitution of the grand chapter, to promote the practice of "charity and fraternity", is of little moment. Charity as there used must, in view of the structural set-up of the order, be construed in its broadest sense as readiness to overlook the faults of another, Christian good will and love toward fellow-members.

The Fraternal Benefit Society Act of July 17, 1935, P. L. 1092, has been referred to and, while it may be that some associations might be declared charitable since the passage of that act, which had theretofore been declared noncharitable, it is clear that neither York Chapter of the Eastern Star nor the ordinary subordinate lodges of other orders fall within that act.

That act applies only to such societies operating under the lodge system as "make provision for the payment of benefits in accordance with section nine". Section 9 specifically requires a fraternal benefit society to provide "for the payment of death benefits". As York Chapter No. 169 pays neither sick nor death benefits, it cannot be affected by this Act of 1935. It is also pointed out that section 34 of that act specifically exempts "purely social or labor organizations", and it is our position that York Chapter is a purely social organization maintained for friendly intercourse and companionship among its own members and among other members of the Order of the Eastern Star.

Other decisions in this State which we think support our conclusion that York Chapter is not a charity are Ralston's Estate, 290 Pa. 374, Swift's Executors v. The Beneficial Society of the Borough of Easton, 73 Pa. 362, and Channon's Estate, 266 Pa. 417; but further discussion seems to be unnecessary.

The bequest to York Chapter not being for a charitable use, the second question arises: Can it as an unincorporated association take the bequest? Our answer is in the affirmative. There are expressions appearing in the reports of our decisions that an unincorporated noncharitable association cannot take any property of any kind by gift or otherwise, for the reason that it is not a legal entity.

One of the later decisions on this subject is that of Equitable Life Assurance Society v. Lee et al., 83 Pitts. 271 (1934), where an insured employe of Pittsburgh Screw & Bolt Corporation, under a group policy of insurance, attempted to change the beneficiary therein named to "The Pittsburgh Screw and Bolt Corporation Safety and Welfare Association", an unincorporated association which appears to have held its first meeting on June 21, 1926, and, according to the minutes, for the purpose of explaining to the employes their taking out insurance, but nothing was said about

organizing an association. No constitution or articles of association were ever adopted. The court held (p. 274):

"An unincorporated association under the common law is defined as a voluntary association of individuals under the common law right of contract. The contract of association may properly be and generally is embodied in an instrument termed 'articles of association' or 'constitution', which when duly adopted by the association governs the powers, rights and liabilities of the association and its members and corresponds to the charter of a corporation. As the Pittsburgh Screw and Bolt Corporation Safety and Welfare association has no contract of association in any form, it has no existence or powers. If it were conceded that it was a *bona fide* unincorporated association it cannot become by name a beneficiary under an insurance contract or take any property of any kind by gift or otherwise in its name for the reason that an unincorporated association is not a legal entity."

In Craig et al. v. Lilly et al., 6 Sadler 183 (1887), a bequest was made by Charles Albright, deceased, in favor of the "Carbon County Law Library" and the Supreme Court, in holding the bequest void, said that "the Carbon County Law Library has no corporate existence; it is not even an incorporated society; it has no membership, no constitution or contract of association, in fact, no organization."

Would the above-cited cases justify the inference that, although they were unincorporated societies, if they had been organized as completely as York Chapter the decisions of the courts might have been otherwise?

In Evangelical Association's Appeal, 35 Pa. 316, the question was raised before the Supreme Court as to whether an unincorporated noncharitable society could take a bequest, but the question was not answered because the court found that the Evangelical Associa-

tion was a charity and therefore entitled to take the bequest.

York Chapter, as we have already stated, from the viewpoint of the practical administration of its business, was thoroughly organized by the constitution of the grand chapter and its own local bylaws, with a complete financial set-up. It had a definite and fixed roster of membership and a fixed place and time of meeting. It lacked only, so far as an organized entity was concerned, the sanction of the corporation laws of the Commonwealth.

Babb v. Reed, supra, and Ash et al. v. Guie, to use, etc., 97 Pa. 493, are authority for holding that the legal status of York Chapter is some form of partnership. In the case of Liederkranz Singing Society v. Germania Turn-Verein, 163 Pa. 265, the Supreme Court said that in cases of unincorporated associations suit may be brought either in the names of certain members in behalf of themselves and all others interested in the association, naming it, or in the name of the association by certain of its members, naming them. The court further held (p. 268) :

"Unincorporated societies have long held in this state an intermediate position between corporations and partnerships. Those for religious purposes, it is said by Lowrie, J., in Phipps v. Jones, 20 Pa. 260, 'have always, and especially since the Act of 1731, been recognized as having an associate and quasi corporate existence in law'. Their ownership of property is of the same intermediate character. It partakes of the qualities of both the others, the title being for many purposes joint and several like that of partners or joint tenants, while the right of possession is joint only as in corporations. Where the question of the right of present possession arises it must be decided by the constitution and by-laws of the association, or in the absence of any sufficient provision therein for such a case, by the majority."

The Procedural Rules promulgated by the Supreme Court of Pennsylvania, numbered from 2150 to 2175, prescribe the procedure to be followed in suits by and against unincorporated associations. These rules are substantially the same as laid down in Liederkranz Singing Society v. Germania Turn-Verein, supra, and apply to any action or proceeding at law or in equity. Judge Goodrich and Professor Amram, both regarded as high authorities, in their commentaries to Rule 2151-2, say:

"As used in this chapter of rules, unincorporated association means any non-incorporated association of individuals engaging in an activity in a common name. The activity need not be commercial and the absence of a profit-making purpose is immaterial. . . . In these rules, a departure has been made from the common law concept that an unincorporated association was not an entity. The same reasons which led to an extended recognition of the entity theory in the case of partnerships, have been equally persuasive in favor of treating an unincorporated association as an entity for the purpose of suit."

The same authors, in their commentary 2 on Rule 2153, say:

"Suit against an unincorporated association *eo nomine* was forbidden under prior practice both at law and in equity. [Italics supplied.] Rule 2153 abrogates the prohibition of suits against an unincorporated association in its association name. This change in procedure was made for two practical reasons.

"In the first place, the association activities may be conducted on so large and extended a scale that the plaintiff, dealing only with a general manager or clerk of the association, may be unable to ascertain who are the members and the officers of the association. Again, the plaintiff may have been injured by a vehicle bearing the association name and may be unable to learn more than that a vehicle of that association struck him. The

rule therefore permits the plaintiff to sue the unincorporated association in its association name without naming any members or officers as parties defendant or as representatives of the association.

"In the second place, many an unincorporated association has just as much actual existence in the eyes of the layman as any corporation. The unincorporated association, acting through its agents, makes contracts, has rights, incurs liabilities and owns property distinct from that of its members. If it has sufficient existence to have a separate bank account or to borrow money it has sufficient existence to be sued directly at law in its own name."

If the common-law concept of an unincorporated association, that it is not an entity, has changed to the modern concept described as above, we can see no good reason for this modern concept not being extended so as to include its right to take a bequest under a will. True, the commentaries above quoted from Judge Goodrich and Professor Amram relate to procedural law, but the old common-law concept of the non-entity of an unincorporated society was also founded on procedural law.

Our research of the authorities has not enabled us to find any decision of the appellate courts of this State which flatly decides this question. The latest decision involving this question came up in Lawrence County in Houk's Estate, 33 D. & C. 511, where the auditor appointed to make distribution of an executor's account found that Lawrence Pomona Grange No. 65, a noncharitable association, was entitled to take a bequest of personal property made to it in Houk's will. The auditor further held in that case that, in order to carry out testator's intention, all that was necessary was for the court to see to it that the gift reached the proper officer of the association. Exceptions filed to the auditor's rulings were dismissed by President Judge Bra-

ham, who adopted the auditor's opinion as his own without further comment.

We have not overlooked the case of Rathbone's Estate, 11 N. Y. S. (2d) 506, in which Delehanty, surrogate, refuses to accept the doctrine of Houk's Estate, supra, but we prefer to follow Houk's Estate as being more authoritative and in line with the modern legal concept of unincorporated associations in Pennsylvania.

Based upon the foregoing authorities and Sharp's Estate, supra, where a bequest to the Great Council of the Improved Order of Red Men, apparently an unincorporated society, was sustained, we conclude that York Chapter No. 169, Order of the Eastern Star, an unincorporated society or association, is capable of taking the bequest given to it under the fifth item of the last will and testament of Gussie A. Spotz, deceased, and an award will be accordingly made to it in our adjudication of the account of George D. Hemler, successor executor.